they and and they and also the Atlantic Pharmacy used a particular um program that matched um interactions with various medications and dosages of various medications and just writing just approving the prescription itself would not necessarily have raised a red flag but aren't you aren't you aren't you just rebutting the red flag testimony your point is that the government exceeded the scope of what they said this witness would talk about but um the government said the kazarian would not testify about quality or usefulness of the cpcs that he reviewed and i just if you could point me to a place a single place in the record where kazarian testified to the quality or usefulness of the cpcs well uh yes what he what he testified about um violated the ex post facto clause because he knew that what i'm sorry the statement the statements he used in his testimony were taken directly from the mandatory training continuing education that came into effect post the indicted um the indicted alleged indicted uh offenses occurred um but you're talking right there about the law change what i'm asking about is the you've raised the issue of whether the the government's witness exceeded the scope of what he was supposed to testify about and i just i'm not sure where in the record he did so he misstated opinions about dosage the formulations under the statute are technical matters he should have testified about what he knew about he did not and and the um statute did not require the assessment of prescriptions for appropriate therapeutic value yet he he asserted that that that was what was required so i guess i'm still just asking you to point to something in the record about where when the government said he wouldn't testify about the quality or usefulness of the cpcs where where do you say did so i'm looking at um volume 572 of the record page 123 to 24 also docket entry 316 at page 45 and so what what is he saying on those can you can you read to me what you're quoting well he he he was talking about the law that had not been enacted yet and and he'd also when he testified about this um about the 85 year old patient and the young child uh that was outside the scope and nature of what had been agreed by the parties and the court would be his testimony okay so you're on the defendants up so you're pointing to the 85 year old 10 year old issue and then the recently enacted law that's what you're pointing to that's correct okay and um in oh and you have exceeded your time i took you over time so we are going to proceed to uh mr upson and you have five minutes may it please the court keith upson for appellate patrick tong though the courts made me suddenly realize just because i pronounce it tongue doesn't necessarily mean i'm correct which is part of the bane of appellate practice we we read all day and interact very little with other humans good morning and thank you for allowing thank you for allowing us to appear this way we we briefed plain error as to the course of deliberations issue uh for the simple reason council was absolutely silent when the district judge said we have a category 5 hurricane headed straight toward us on that note it's unclear to me what portion of the record supports the government's assertion that hurricane arma was a tropical storm because what the court said was category 5 at sidebar when they were discussing it well and i remember erma um and i remember it was a big deal but as far as the record shows uh at trial um both defense counsel seemed happy to not too factually dissimilar from some otherwise very factually dissimilar facts this court more recently addressed in brewster uh and and if i may hold the response to that a little further into my three minutes and 50 seconds i promise i'll i'll address it because here not only did counsel stay silent at at the time category 5 headed straight our way came out of trial judge's silent that remained silent after the jury returned a verdict but under plain error review you know we've got to move that rock up that mountain and show there was error that it was plain and affected substantial rights and and i'm sure you know um and and well i assume you would agree with me that uh i haven't been able to see that any circuit has ever held that an impending weather event constituted coercion per se so if you could address that as not that i could find judge and if if i could have found it if i could have found one on all fours factually um shame on me if it wasn't first and foremost in the brief and an argument but but i couldn't and of course uh the government found lucas um for an example actually where the the hurricane if i read lucas correctly lucas versus american the hurricane was literally impacting the courthouse at the time uh the court was going to give the case to the jury but lucas was decided in november of 1980 i don't think it's clear from the opinion when lucas was tried or which storm they're referring to let me ask you a question so i i was actually surprised at how much hurricane case law there was um but it seemed like the problem you know whenever you're at the end of a trial the jury wants to go home right that's been my experience at every trial that i've ever been in they don't want to stay the extra day they don't want to come back they just want to get it done it seems like the only problem if there was a hurricane would be if the judge had hurried them up had eliminated some option and said you know you're you we're not going to come back you have to stay all night or if the judge had him that one case said you know you only have 15 minutes to get the verdict because there's a hurricane was there anything that the judge did in this case that hurried the jury to get a to get a verdict um or made it so that they were coerced into returning a verdict judge i i apologize if this isn't clear in the brief but it's our position that the act of giving the case to the jury at the point the court gave it to the jury is a sufficient act of coercion necessary under the rule and on the rights this court discussed in brewster so yeah it's like a bright line hurricane rule that you would propose not at all and we recognize that asking you to extend the rights the the substantial rights the defendants to to not have that pressure on the jury while they deliberate um be extended from brewster to brewster to these facts uh it's it's not at all something you can do on a bright line basis you're going to have to do it on on a case-by-case basis it's going to have to be very fact dependent um but we continue to maintain that on the totality of the circumstances here the the act of giving the case to the jury with a category five headed straight for them created sufficient substantial risk one or more jurors were going to abandon their honest convictions which in turn denied the defendants of their substantial rights to an uncoursed verdict well what about giving a case to the jury the day before like a three-day holiday you know a three-day weekend i mean would that be coercion because they don't want to come back on tuesday they want to have a good three-day weekend judge i i appreciate that in this context it sounds like an absurd position but you and i both know some trial attorneys some appellate somebody's going to make that argument at some point but the the nature of having being in the cone of impact from a category five storm is so factually above and beyond um one of the things that the government says about how the jury returned their verdict you know four days before arma made landfall and and laughed though it wasn't funny because of course they did that's the entire point you have to take preparations in advance if you're going to evacuate you can't wait until all the gas stations are out of gas if you're going to board up and weather it in place that have to do it and it wasn't evacuation order in place at the time that the jury was ordered to proceed to consideration it's my understanding from from the record and the black letters on the white page that the district court said there was discussion that the mayor may begin ordering evacuations the following day and counsel counsel you know i'm going to bring you back to my question that you promised you would address later on and that's at trial counsel for the defendants were both happy to let the jury continue deliberating and they offered to assist in whatever way they could to avoid a mistrial and if those um defense counsel weren't distracted why should we assume the jury was because they were tired and sick of it as well and i think if we apply occam's razor what's the more likely situation after three weeks of trial did they really think they were going to get acquittals or did they just want to be done with it and that's the standard i mean have you ever sat through an eight-week trial i mean that's the thing i mean that if that's the standard the jury didn't want to really deliberate all that much and they wanted to go home and the defense counsel was tired i mean i just don't see how that's something we could apply i get i get that there's a hurricane involved here but it just seems like the kinds of stuff we're talking about is just kind of the human factors that go into every trial that has ever been tried well and i know i'm over but i promised too i would come back to what was factually similar with Brewster and it was a 2254 so of course it was a state court proceeding but in Brewster this court said where defense counsel similarly sat there like a potted plant and said nothing you know what under these facts and circumstances we can't say that jury wasn't coerced was there now was factual was there an allen charge here there was no allen charge here and i believe there were at least important difference between this case and Brewster right it's the distinction between why i'm not trying to persuade the court that Brewster is facially controlling precedent it's why i'm asking this court to extend the recognition of those rights and and the rule announced in Brewster to circumstances such as those where there was no well in charge all right and counsel you have exceeded your time you've still got time for move to the government uh miss mariani good morning your honors may it please the court assistant united states attorney nicole mariani on behalf of the united states while defendants have raised several issues at argument all of them are subject to either harmless error or plain error review and can be easily resolved by looking to the overwhelming evidence presented by the government's 46 trial witnesses many of whom were defendants co-conspirators or employees those witnesses testified that defendants stole over 31 million dollars in less than two years from tri-care the insurance provider for the united states military and the federal employee health benefits program by filing insurance claims that they knew were fraudulent and each each claim had a trio of independent fraud within it and those witnesses also testified that defendants knowingly and woefully paid kickbacks to doctors and patients ample circumstantial evidence corroborated that testimony turning more specifically to that overwhelming evidence guilt defendant scheme was rooted in a multi-level fraud first every claim filed by atlantic was fraudulent these atlantic was admitted to the insurance networks under false pretenses as francois lied saying he had never been disciplined by the dea saying he had never filed for bankruptcy and saying he had never paid a subcontractor more than 25 000 a year second every compound prescription cream filed by atlantic was fraudulent because atlantic did not collect the required copayments and there was a third independent basis for the fraud in every compound prescription claim filed by atlantic which is that the underlying prescriptions were invalid because there was no legitimate doctor patient relationship the prescriptions were medically unnecessary and they were often shipped to patients in states where atlantic was not licensed indeed we have five co-conspirators who testified that atlantic did not collect those requirement you have three co-conspirators who testified that defendants knew they were filing fraudulent claims including louis tong who was francois's used car salesman personal trainer and occasional nanny with no medical background was creating the formulas that these physicians were being required to prescribe and you have six co-conspirators who testified that defendants knowingly and willfully paid kickbacks to the doctors and patients including sincere and meek they repeatedly told francois and tong that they were using the money atlantic gave them to pay doctors and patients this court has held that co-conspirator testimony alone would be sufficient to uphold convictions but in this case that testimony was then overwhelmingly corroborated you have five patients testifying that the atlantic never collected copayments or requested copayments for them for these compound prescription groups you have dr hayman testifying that he told francois three times he was filling forged prescriptions francois then continued to fill 15 more such prescriptions and worked with the recruiter who provided them for years tong's emails and texts showed he created the formulas he was sending to these physicians to prescribe and that he knew atlantic that these recruiters were taking the money atlantic paid them to pay physicians and doctors francois testifies in his own defense that he knew nothing about the fraud or paying of kickbacks and the jury was entitled to credit that substantive evidence and then there's also a mountain of circumstantial evidence showing that francois and tong committed health care fraud and paid kickbacks you know the fraud at atlantic was obvious you have pharmacists near henry who quits after three months because it's so clear these prescriptions are invalid yet francois is filling all the prescriptions that he rejected you have dr garcia sending over 2400 prescriptions in a matter of months to atlantic all providing the many of these patients live in states that are far away from this office and where atlanta is not licensed um atlantic is receiving daily returns of prescriptions with patients calling to say they don't want them they don't know who this doctor is um and francois and tong were certainly aware of this francois is the sole owner of atlanta francois and tong were there every single day francois is the only signatory on the bank accounts where all of the fraud proceeds are deposited and francois are the only and tong are the only two people to withdraw those fraud proceeds for personal gain then they also took many steps to conceal their crimes they direct others to convince patients to keep online prescriptions they alert co-conspirators when the board of pharmacy is auditing atlanta they direct others to repackage and ship their prescriptions to states where they are not licensed they direct sincere to pay all our kickbacks and cash to avoid detection they ask meek and small to file w4 forms to show that their employees um when law enforcement came to search atlantic they concealed room 109 and then removed the computers and phones out of that room they go to employee lee's home and tell her mother to make sure lee does not incriminate them they direct the sincere to delete and shred all their documents and then tong deletes all of his texts and emails so in sum your francois and tong are playing a daily and active role in the healthcare and fraud conspiracies the conviction was supported by evidence so overwhelming that any of these alleged trial errors if there were errors which the government maintains there were no errors they would be harmless and they certainly could not have affected their substantial rights now moving over to what miss lowenthal was talking about expert witness kazarian um as the court noted in the expert notice the government said that kazarian would testify about red flags that is precisely what he testified about so the evidence she's pointing to where he spoke about the 85 year old and the 11 year old expert kazarian testified it was a red flag that an 85 year old and an 11 year old were receiving the same medication dosage explaining that you want to make sure medication is adjusted and that as we age our bodies change that statement does not reference whether the medication prescribed to either the child or the senior citizen was effective was correct or was proper all he was testifying was it is concerning it raises a suspicion that you give the exact same thing to two people who are so obviously disparate using our common sense and then also going to what miss lowenthal reads about the red speaking only for myself i think i'm on board with your argument about the kazarian testimony i did have one question about the 404b evidence you say that the stipulation constituted invited error but hadn't the court already indicated that it was going to allow the evidence in i don't see how that can be the stipulation made after the court indicated that it would let the evidence in could be considered invited error um yes i think that's a very good point um the court makes is again like they have stipulated to how it would come in but yes this was sort of after they've been told it is coming in um there is a degree of it raises a question because they stipulated it in this way to make sure sort of further more detrimental evidence did not come in but i think regardless of whether the invited error doctrine applies this evidence was properly admitted under 404b is showing motive intent and knowledge it's you know sort of the precise replica of the type of fraud they committed in this case and certainly as i explained before it is harmless error with the absolutely overwhelming evidence in this case the defendants committed all the crimes of which they were convicted and then the last attorney to talk argument about hurricane irma as the court at trial they did not sit there quietly as if pot of plants and not respond this was an active discussion with the court where you have both defense counsel explicitly stating that they wanted the jury to stay and continue deliberating they came together with the government to pay the rental car fee for one of the jurors so that the jury could say and continue deliberating the jury deliberated for over 14 hours over the course of a friday and a tuesday and which split verdicts as to both defendants and again as the court pointed out there is not a current storm yes hurricane irma was coming it was very dramatic people needed to prepare the jury was deliberating on friday and tuesday the storm hit over the weekend there was no jury charge in place putting any kind of time limit on the deliberations and unlike the cases in lucas and some of the others there's not a factually impossible verdict instead as we've been talking about this jury deliberated undisturbed for 14 hours over two days where they saw absolutely overwhelming evidence from 46 witnesses who presided consistent testimony that were corroborated by the documents and by just including tom's own texts and emails i ask you to address something really quickly um opposing counsel said that the government's notice for kazarian was um too late uh could you address that absolutely i do want to know that issue was not raised in defense counsel's briefs um what had occurred was kazarian's notice was provided 17 days before trial began and also to note kazarian did not testify until the ninth day of trial so he did not testify until 26 days after that notice was provided um before the district court i believe francois did challenge the timeliness of his notice the district court denied that challenge that was certainly not an abuse of discretion given not only the 26 days but that the government and the district court offered francois a continuance if he would like to get more time to obtain an expert on his own behalf he stated he did not he explicitly declined the continuance and said he wanted to proceed to trial and that is the extent to which that issue was sort of raised below and certainly the government's position that with 26 days testimony about sort of red flag prescriptions which is fairly standard in these kind of health care fraud cases is certainly enough notice for the defendant to prepare and obtain a witness should he want to and he chose not to accept the continuance if the court has no further questions um the government will rest on its brief and ask that francois and tom's convictions be affirmed thank you thank you very much um miss lowenthal you have reserved two minutes for rebuttal you're muted miss lowenthal you're muted you're muted ah no thank you with regard to 46 witnesses who testified yes many of those were convicted criminals many of them had a motive to um lie or embellish their testimony because they were hoping to get reduced sentences and in fact the key witness uh mrs sincere um was it was shown in in cross-examination to have lied to the government on several occasions um with regard to uh the 404b evidence and the alleged lies in mr francois's applications to various um entities uh for recertification of his pharmacy um those occurred mainly in 2010 number one they were mistakes or they were actually the correct answer to the specific question that was asked and like his license was never uh his license was once disciplined for a misreef mistaken refill but it was never um he was never disciplined his license was never suspended his license was never revoked and the same for the other questions such as bankruptcy yes he once filed for bankruptcy but that was that proceeding was dismissed it was never any finding in bankruptcy or any holding there was no bankruptcy proceedings that took place for mr francois um in addition these alleged lies on the applications occurred in 2010 and the government alleges that that was somehow fraudulently um that those were fraudulently part of a conspiracy to defraud uh insurer pay insurer payors um in four years later which just makes no sense at all with regard to the jury and i will not take mr mr upson's issue but um there were 15 days of trial over almost one month one of the jurors was a school principal and she said that on that day on that that um the the day of deliberations the second day her phone was blowing up that is literally in that's from the transcript from her um school uh employees about what they were to do to to secure the school properties for the um for the impending hurricane so and miss lowenthal is doubtful that she was oh yes miss lowenthal you've exceeded your time so i'm gonna thank you stop you there um mr upson you have two minutes thank you the government's not going that's a close call as to the volume of the evidence they present right i mean that's i've never seen it this case was no different it was extensively tried and i understand the jury spoke as to those fact questions in their verdict but can we say with sufficient certainty the verdicts were a product of the jurors following their oath or because a minority the jurors sacrificed their conscientious scruples for the sake of reaching agreement with a category 5 hurricane headed straight for them it certainly created a substantial risk one or more jurors would abandon their honest convictions we we expect the jurors to be reasonable though right i mean there's no presumption that they're superhuman or ability to uh divorce their thoughts or concerns from all awareness of the imminent hurricane i don't think it would be reasonable to expect savvy jurors to send out a note that says hey we're thinking about acting contrary to our oath so the fact they didn't ask for more time i don't think is illustrative they didn't want more time they this very real impending threat such to an extent that we're asking this court to extend rooster to the facts of bar on the totality of the circumstances here giving the case to the jury with that storm heading straight for them at the time the court said so created a substantial risk one or more jurors were going to abandon their honest convictions and in turn deny the defendants their substantial right to an uncoerced verdict and we ask the court to vacate the judgments and sentences and remand for a new trial uh thank you mr upson thanks to all of you um we have your case under submission so the next case our last case of the day